UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| THOMAS POWERS, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 12-CV-2041 |
| ) | |
| CHAPLAIN COLEMAN, ASSISTANT ) | |
| WARDEN CALLOWAY,[1] and CHAPLAIN ) | |
| S. KEIM, ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court for ruling on the Motion for Partial Summary Judgment (#65) filed by Plaintiff, Thomas Powers, and the Motion for Summary Judgment (#68) filed by Defendants Victor Calloway, Lamar Coleman and Stephen Keim. This court has carefully reviewed the arguments of the parties and the documents provided by the parties. Following this thorough review, Plaintiff's Motion for Partial Summary Judgment (#65) is DENIED and Defendants' Motion for Summary Judgment (#68) is GRANTED in part and DENIED in part.

## FACTS[2]

Plaintiff, Thomas Powers, was transferred from the Dixon Correctional Center to the Danville Correctional Center on May 25, 2011. (Deposition of Thomas Powers, pp. 12-13.)

---

[1] Plaintiff sued Defendant Victor Calloway under the name "Callaway." However, he testified at his deposition that his name is spelled "Calloway." The clerk is directed to correct the spelling of Defendant Calloway's name.

[2] The facts are taken from the Statements of Undisputed Facts provided by the parties and the documents provided by the parties.

At that time, Defendant Lamar Coleman was the acting chaplain at Danville. (Deposition of Lamar Coleman, p. 8.) As acting chaplain, one of Coleman's responsibilities was to oversee religious diet requests. (Coleman, p. 9.) Coleman had the authority to decide whether to grant or deny these requests. (Coleman, pp. 9-10.) Coleman followed a process whereby he required an inmate who wanted a religious diet to submit a written request, show that he is participating in that faith and describe in detail why it is he needs that specific diet. (Coleman, p. 13.)

Coleman received a letter from Plaintiff which stated that he had won a lawsuit regarding a religious diet. (Coleman, p. 25.) Plaintiff testified at his deposition that his religious designation was Seventh Day Adventist at the time he filed his lawsuit in 2008 against the chaplain at Dixon. (Powers, p. 19.) After his lawsuit settled and there was an agreement to provide him a kosher diet, the chaplain at Dixon changed his religious designation to Messianic Hebrew so he could receive the kosher diet. (Powers, p. 20.) Plaintiff testified that he started learning more and more after that and "spiritual enlightenment followed." (Powers, p. 20.) Plaintiff testified that he believes a kosher diet is a requirement of his religion. (Powers, pp. 28-29.)

Coleman met with Plaintiff to discuss his letter, possibly in June 2011. (Coleman, p. 25.) During this interaction, Plaintiff requested a kosher diet and Coleman responded that he would look into the matter. (Coleman, p. 26-27.) Coleman became aware that Plaintiff previously received a kosher diet at Dixon prior to being transferred to Danville. (Coleman,

pp. 30-31.)  Coleman looked into the matter by consulting the Chaplain's Handbook and checking the offender tracking system.  (Coleman, p. 27.)  The Illinois Department of Corrections Religion History Inquiry shows that Plaintiff's religious designation was: (1) Christian from May 3, 1999 to August 15, 2001; (2) Catholic from August 15, 2001 to January 29, 2003; (3) Christian from January 29, 2003 to April 17, 2003; (4) Catholic from April 17, 2003 to August 26, 2007; (5) Seventh Day Adventist from August 26, 2007 to October 5, 2009; (6) Catholic from October 5, 2009 to September 29, 2010; and (7) Messianic Hebrew from September 29, 2010 forward.  (#69, Exhibit B.)  Plaintiff testified that he changed his religious designation to have access to more opportunities or to be able to go to specific bible studies.  (Powers, pp. 15-19.)  He also testified that he always believed in Jesus Christ and that his faith never actually changed, but rather "just got enhanced."  (Powers, p. 15.)

When Plaintiff requested a kosher diet at Danville, he said he was a Messianic Hebrew and required a kosher diet.  Coleman testified that he did not think Plaintiff was very knowledgeable about his religion because he stated that he needed a kosher diet "in order to attain a deeper relationship with the Father."  (Coleman, pp. 33-34.)  Coleman testified that he thought Plaintiff should be able to describe how the food is to be prepared, the process which makes it kosher.  (Coleman, p. 34.)  Coleman testified that Plaintiff referred to the Leviticus dietary laws from the Bible.  (Coleman, p. 52.)  According to Plaintiff, he had a conversation with Coleman about his beliefs and what he was doing and Coleman told him

he was sincere in his beliefs. (Powers, pp. 77, 94.)

Coleman ultimately decided to deny Plaintiff's request for a kosher diet based on lack of sincerity. (Coleman, pp. 36-37.) Coleman testified that one of the ways he used to determine sincerity was whether the inmate was able to tell him about the tenets of his religion and was able to tell him why he needed that diet, why the faith required that specific diet. (Coleman, p. 16.) Coleman testified that the "whole key" was the individual's sincerity. (Coleman, p. 16.) Coleman testified that, during the time he was still deciding, Plaintiff filed a grievance about not receiving a kosher diet. (Coleman, p. 30.) Coleman confided in the Chief Chaplain, Chaplain Stephen Keim, regarding Plaintiff's grievance. (Coleman, p. 30.) Coleman testified that, based on a faxed copy of the grievance, Keim told Coleman that Plaintiff's request for a kosher diet should be denied. (Coleman, p. 30.) According to Keim, he does not have any responsibility for granting or denying diet requests at the facility level. (#69, Exhibit D, response to Interrogatory No. 17.)

Defendant Calloway is the Assistant Warden of Programs at Danville. (Deposition of Victor Calloway, p. 6.) Calloway informed Plaintiff that his kosher diet request had been denied by Coleman based on lack of sincerity. (Powers, p. 54.) Calloway testified that decisions on religious diets were made by the chaplain and that he did not have the authority to grant or deny an inmate's request for a religious diet. (Calloway, p. 8-9.) Soon thereafter, Coleman offered Plaintiff a vegan diet because of his persistence. (Coleman, pp. 35-36.) Plaintiff testified that a vegan diet is insufficient because he "can eat meat." (Powers, pp.

36-37.) Plaintiff's expert on religion, Bruce Rosenstock, testified that a vegan diet would not violate the requirements of the Messianic Hebrew religion but "would not satisfy the requirements." (Deposition of Bruce Rosenstock, p. 17.) Rosenstock testified that "[t]o only eat a vegan diet is not to violate the law, but it is not to fulfill the law." (Rosenstock, p. 17.) Coleman testified that the Chaplain's Manual states that Messianic Hebrews "can have a vegan diet or a kosher." (Coleman, p. 23.) Plaintiff was offered a vegan diet but ate the regular diet. (Powers, p. 36.)

It is undisputed that Plaintiff never received a kosher diet while he was at Danville. Coleman testified that, while he was acting chaplain, he did not approve the "[m]aybe three" requests for a kosher diet. (Coleman, p. 46.) Plaintiff was paroled on June 26, 2012, and is now housed at the Rushville Department of Human Services Treatment and Detention Facility. He testified that he is receiving a kosher diet at Rushville. (Powers, p. 38.)

PROCEDURAL HISTORY

On February 8, 2012, Plaintiff filed a pro se Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction (#1) and stated that he was being denied his right to practice his religion through his kosher diet for his religion of Messianic Hebrew. Plaintiff asked this court to order Danville to provide him with a kosher diet. On March 21, 2012, Plaintiff filed a pro se Complaint (#4) pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). On April 23, 2012, a merit review hearing was held. The case was allowed to proceed as to his claim regarding a

religious diet.³ On August 3, 2012, Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction (#1) were denied because he had been transferred to Rushville and the relief requested could no longer be granted. On August 23, 2012, Plaintiff accepted the representation of James Mariana and Christopher Tourek, law students at the University of Illinois College of Law. On September 6, 2012, the case was set for a jury trial on April 22, 2013, at 9:00 a.m.

On February 28, 2013, Plaintiff filed a Motion for Partial Summary Judgment (#65), with attached exhibits. Also on February 28, 2013, the parties filed a Stipulation for Dismissal (#67) and agreed that Defendants Keith Anglin, Marcia Keys, David Laker and Jackie Miller were dismissed as Defendants with prejudice. On March 1, 2013, the remaining Defendants, Victor Calloway, Lamar Coleman and Stephen Keim, filed a Motion for Summary Judgment (#68) and a Memorandum in Support (#69) with attached exhibits. On March 1, 2013, this court held a telephone conference and set response dates for the Motions for Summary Judgment. This court also set a final pretrial conference on April 15, 2013, at 9:30 a.m.

On March 20, 2013, this court held a motion hearing by telephone and heard additional argument on the issue of personal liability on the part of Defendant Calloway. This court then ruled that Plaintiff's Motion for Partial Summary Judgment (#65) was

---

³ Plaintiff included a claim regarding denial of medical treatment for his hip. This claim was dismissed with leave to refile in a separate case.

DENIED and Defendants' Motion for Summary Judgment (#68) was GRANTED in part and DENIED in part, with a written order to follow. This Opinion therefore sets out the basis for this court's ruling.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Gordon v. FedEx Freight, Inc., 674 F.3d 769, 772 (7th Cir. 2012). However, a court's favor toward the nonmoving party does not extend to drawing inferences supported by only speculation or conjecture. Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012). In § 1983 cases, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." Padula v. Leimbach, 656 F.3d 595, 600 (7th Cir. 2011), quoting

McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

<p style="text-align:center">II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</p>

In his Motion(#65), Plaintiff argued that Defendant Coleman could not create a genuine dispute of material fact as to Plaintiff's claim of a violation of his First Amendment rights. Plaintiff contended that Coleman failed to provide any logical reason or prison concern that would validate the denial of Plaintiff's dietary request. Plaintiff argued that, under the factors set out in Turner v. Safley, 482 U.S. 78, 89 (1987), there can be no claim that the denial of Plaintiff's dietary requests related to a legitimate penological interest and therefore, as a matter of law, Coleman's actions violated Plaintiff's First Amendment rights. Plaintiff also argued that Coleman's determination of Plaintiff's lack of sincerity was unreasonable. Plaintiff argued that his change of religious designations did not show insincerity because there was no large doctrinal change in his beliefs. Plaintiff further argued that Coleman's inquiry was inadequate because he did no research, research which, according to Plaintiff, would have shown that all of Plaintiff's religious designations were based on the same set of beliefs. Plaintiff argued that he had been receiving a kosher diet at Dixon and should have continued to receive it at Danville.

It is well established that inmates have the right to freely exercise their religious beliefs. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, in religious diet cases, a "prison is entitled to ensure that a given claim reflects a sincere religious belief." Vinning-El v. Evans, 657 F.3d 591, 594 (7th Cir. 2011). A pattern of frequently changing

religious designation can be an indication of insincerity. See Williamson v. Twaddell, 2012 WL 3836129, at *5 (C.D. Ill. 2012). If a chaplain believes that a prisoner is insincere (in other words, believes that the prisoner wants the diet for a non-religious reason), then the chaplain is entitled to qualified immunity, even if a judge or jury disagrees with the chaplain's conclusion. Vinning-El, 657 F.3d at 594.

Based upon the evidence provided to the court, this court concludes that there is a genuine dispute of material fact regarding whether denying Plaintiff a kosher diet was a violation of his First Amendment rights. This court notes that Coleman testified that he concluded that Plaintiff was not sincere in his beliefs, and a jury could agree with this assessment, especially considering the number of times Plaintiff's religious designation changed. A jury could also conclude that the offer of a vegan diet was a reasonable alternative. Therefore, Plaintiff is not entitled to partial summary judgment against Coleman and Plaintiff's Motion for Partial Summary Judgment (#65) is DENIED.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argued that they were entitled to summary judgment on Plaintiff's claims because: (1) the denial of Plaintiff's request for a kosher diet was not a violation of Plaintiff's rights because Defendant Coleman believed Plaintiff's request was insincere; (2) Plaintiff was offered an alternative diet that did not violate his religion but chose to consume the regular prison diet; (3) Defendants Calloway and Keim lack the requisite personal involvement to be held liable; (4) injunctive relief is not available so Plaintiff has no claim

under the RLUIPA; and (5) Defendants are entitled to qualified immunity.

## A.  DENIAL BASED UPON INSINCERITY

Defendants argued that Coleman denied Plaintiff's request for a kosher diet because Plaintiff was insincere and could not state why he wanted the kosher diet. Defendants further argued that if Coleman thought Plaintiff was insincere he was entitled to qualified immunity. This court notes that, while Coleman testified that he concluded that Plaintiff's religious beliefs lacked sincerity, Plaintiff testified that Coleman said he believed Plaintiff's beliefs were sincere. This court also notes that Plaintiff has questioned the adequacy of the inquiry conducted by Coleman into Plaintiff's religious beliefs. Plaintiff has pointed out that a prison official must *reasonably* believe that an inmate's professed religious choice was insincere. See Grayson v. Schuler, 666 F.3d 450, 455 (7th Cir. 2012); Williamson, 2012 WL 3836129, at *4. In addition, to be entitled to qualified immunity, a chaplain must reasonably attempt to determine whether the inmate has a sincere belief that his religion requires the requested diet. See Vinning-El, 657 F.3d at 595. Therefore, this court concludes that there is a genuine dispute of material fact regarding whether Coleman violated Plaintiff's First Amendment rights when he denied Plaintiff's request for a kosher diet and regarding whether Coleman is entitled to qualified immunity.

## B.  OFFER OF ALTERNATIVE VEGAN DIET

Defendants have argued that Plaintiff's claim fails because he had alternative means of practicing his religion and was offered an alternative diet which did not violate his religion


under the RLUIPA; and (5) Defendants are entitled to qualified immunity.

## A.  DENIAL BASED UPON INSINCERITY

Defendants argued that Coleman denied Plaintiff's request for a kosher diet because Plaintiff was insincere and could not state why he wanted the kosher diet. Defendants further argued that if Coleman thought Plaintiff was insincere he was entitled to qualified immunity. This court notes that, while Coleman testified that he concluded that Plaintiff's religious beliefs lacked sincerity, Plaintiff testified that Coleman said he believed Plaintiff's beliefs were sincere. This court also notes that Plaintiff has questioned the adequacy of the inquiry conducted by Coleman into Plaintiff's religious beliefs. Plaintiff has pointed out that a prison official must *reasonably* believe that an inmate's professed religious choice was insincere. See Grayson v. Schuler, 666 F.3d 450, 455 (7th Cir. 2012); Williamson, 2012 WL 3836129, at *4. In addition, to be entitled to qualified immunity, a chaplain must reasonably attempt to determine whether the inmate has a sincere belief that his religion requires the requested diet. See Vinning-El, 657 F.3d at 595. Therefore, this court concludes that there is a genuine dispute of material fact regarding whether Coleman violated Plaintiff's First Amendment rights when he denied Plaintiff's request for a kosher diet and regarding whether Coleman is entitled to qualified immunity.

## B.  OFFER OF ALTERNATIVE VEGAN DIET

Defendants have argued that Plaintiff's claim fails because he had alternative means of practicing his religion and was offered an alternative diet which did not violate his religion

but chose to consume the regular prison diet. Plaintiff argued that adherence to a kosher diet is the most common and important tenet for a member of the Messianic Hebrew religion so the alternative vegan diet offered was insufficient to fulfill Plaintiff's religious diet request. Plaintiff argued that Coleman's opinion that a vegan diet would suffice was insufficient to override Plaintiff's sincere belief that he required a kosher diet. This court agrees that a genuine dispute of material fact exists on this issue, precluding summary judgment in Defendants' favor.

### C.  LIABILITY OF CALLOWAY AND KEIM

To be liable under § 1983, a defendant must be "personally responsible for the deprivation of a constitutional right." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001), quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001). "Section 1983 does not authorize 'supervisory liability.'" Vinning-El, 657 F.3d at 592, citing Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009). Therefore, a supervisor is not liable for a subordinate's conduct unless he is personally involved in the conduct and approves of the conduct and the basis for it. Chavez, 251 F.3d at 651.

This court concludes that, while there is evidence that Calloway was Coleman's supervisor and informed Plaintiff that his request for a kosher diet was denied, there is insufficient evidence that Calloway was involved in making the decision to deny Plaintiff a kosher diet. Calloway testified that decisions on religious diets were made by the chaplain and that he did not have the authority to grant or deny an inmate's request for a religious diet.

11

At the motion hearing on March 20, 2013, Defendants' counsel represented that the Illinois Administrative Code provides that requests for a religious diet are submitted to the facility chaplain. The pertinent provision states:

> A committed person may submit a written request to the facility chaplain to receive an alternative diet for specific religious reasons. The request must contain written verification that the committed person is a member of a faith group that requires adherence to a particular diet and the specific requirements of the diet. <u>Eligibility to receive an alternative diet for specific religious reasons shall be determined by the facility chaplain</u> who shall ordinarily confer with a religious leader or faith representative of the faith group at issue. The facility chaplain and the religious leader or faith representative may interview the committed person.

20 Ill. Adm. Code 425.70(c) (emphasis added).

Based on the evidence presented and the applicable provision of the Illinois Administrative Code, this court concludes that it was up to Defendant Coleman to decide whether Plaintiff's request for a kosher diet would be granted or denied. Plaintiff's testimony that he had conversations with Calloway after he was denied a kosher diet and that he believed that Calloway was behind the decision is not sufficient to raise a genuine dispute

of material fact as to Calloway's personal involvement in any violation of constitutional rights. This court therefore grants Defendants' Motion for Summary Judgment as to Defendant Calloway.

This court reaches a different conclusion as to Defendant Keim. Coleman testified that, during the time he was deciding whether to allow Plaintiff's request, Keim told him that Plaintiff's request for a kosher diet should be denied. Therefore, there is evidence that Keim was personally involved in the decision. This court concludes that there is a genuine dispute of material fact regarding Keim's role in the decision to deny the kosher diet. Further, because no evidence was presented regarding the basis for any decision made by Keim to deny Plaintiff a kosher diet, there is a genuine dispute of material fact regarding whether Keim is entitled to qualified immunity.

### D.  RLUIPA CLAIM

It is undisputed that only injunctive relief is available under the RLUIPA. See Grayson, 666 F.3d at 451. Plaintiff has conceded that injunctive relief is not available in this case and his RLUIPA claim is moot. This court therefore grants summary judgment in favor of Defendants on Plaintiff's RLUIPA claim.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Partial Summary Judgment (#65) is DENIED.

(2) Defendants' Motion for Summary Judgment (#68) is GRANTED in part and DENIED in part. Judgment is entered in favor of Defendants as to Plaintiff's RLUIPA claim

and in favor of Defendant Calloway. Summary judgment is denied as to Plaintiff's First Amendment claims against Defendants Coleman and Keim.

(3) This case remains scheduled for a final pretrial conference on April 15, 2013, at 9:30 a.m. and a jury trial on April 22, 2013 at 9:00 a.m.

ENTERED this   9th   day of   April   , 2013.


    S/: Michael M. Mihm
MICHAEL M. MIHM
SENIOR U.S. DISTRICT JUDGE